UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| MATTHEW PATTON<br><br>    *Plaintiff,*<br><br>v.<br><br>LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT,<br><br>and<br><br>DIRECTOR JERRY COLLINS,<br>   *In his official capacity,*<br><br>and<br><br>DIRECTOR DWAYNE CLARK,<br>   *In his individual and official*<br>   *capacity,*<br><br>and<br><br>SERGEANT BOBBIE CHANEY,<br>   *In his individual capacity*,<br><br>and<br><br>OFFICER DANIEL WELLS,<br>   *In his individual capacity*,<br><br>and<br><br>OFFICER MICHAEL LIVINGSTON,<br>   *In his individual capacity,*<br><br>and<br><br>OFFICER IVAN SAMPLE,<br>   *In his individual capacity*,<br><br>    *Defendants.* | No. 3:22-cv-640-RGJ<br><br>  *JURY TRIAL DEMANDED* |

**COMPLAINT**

1

Plaintiff, Mathew Patton ("Patton"), for his Complaint against Defendant Louisville/Jefferson County Metro Government, Defendant Jerry Collins, in his individual capacity ("Director Collins"), Defendant Director Dwayne Clark, in his individual and official capacity ("Director Clark"), Defendant Sergeant Bobbie Chaney, in his individual capacity ("Sergeant Chaney"), Defendant Officer Daniel Wells, in his individual capacity ("Officer Wells"), Defendant Officer Michael Livingston, in his individual capacity ("Officer Livingston"), and Defendant Officer Ivan Sample, in his individual capacity ("Officer Samples"), (collectively "Defendants"), hereby states as follows:

## NATURE OF THE CASE

1.      This case arises from the Defendants, staff members at the Louisville Metro Department of Corrections Jefferson County Jail ("LMDC"), physically beating and pepper spraying Patton, an LMDC inmate. Without justification or legitimate penological interest, the Defendants assaulted Patton, exhibited deliberate indifference to his resulting injuries, attempted to covered-up their wrongdoing, and intentionally mishandled the subsequent investigation into the use of force. The Defendants' actions were caused by LMDC customs implemented by Director Clark that created a culture of widespread and accepted misconduct amongst corrections staff. After having exhausted his available administrative remedies, and at the risk of retaliation, Patton now brings this suit to hold the Defendants accountable.

2.      Patton seeks damages from the Defendants for: (1) use of excessive force in violation of the Fourteenth and Eighth Amendments to the United States Constitution; (2) denial of adequate medical care in violation of the Fourteenth and Eighth Amendments to the United States Constitution; (3) conspiracy to deny adequate medical

2

care in violation of the Fourteenth and Eighth Amendments to the United States Constitution; (4) § 1983 supervisory liability; (5) civil rights violations committed by the Louisville/Jefferson County Metro Government; (6) battery in violation of Kentucky common law; (7) assault in violation of Kentucky common law; (8) negligent hiring, retention, supervision, & training in violation of Kentucky common law; (9) denial of due process in violation of the Fourteenth Amendment to the United States Constitution; and (10) failure to intervene in violation of the Fourteenth and Eighth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

3.    The allegations of Paragraphs 1 and 2 are incorporated herein by reference.

4.    This action is brought pursuant to 42 U.S.C. § 1983, the Fourteenth and Eighth Amendments to the United States Constitution, and Kentucky common law. The Court has jurisdiction over Patton's federal claims pursuant 28 U.S.C. §§ 1331 and 1343(a). This Court has supplementary jurisdiction over Patton's state law claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Patton's claims occurred in Jefferson County, Kentucky, and all Defendants are subject to personal jurisdiction in this district.

## PARTIES

6.    The allegations of Paragraphs 1 through 5 are incorporated herein by reference.

7.    Plaintiff, Matthew Patton, is a resident of Jefferson County, Kentucky and was a pretrial detainee at LMDC at all relevant times herein. Patton has been continuously

incarcerated at LMDC since December 26, 2020. He remains incarcerated there at the time of filing this Complaint.

8.    Defendant, Louisville/Jefferson County Metro Government is a municipality in the Commonwealth of Kentucky, and it is the entity that empowers and employs LMDC and empowered and employed LMDC Director Dwayne Clark at the time of the allegations made herein. The Judge Executive for Jefferson County is Queenie Averette. The Judge Executive's office is located at 527 W. Jefferson Street Louisville, KY 40202.

9.    Defendant Jerry Collins is a resident of Jefferson County, Kentucky and is the current director of LMDC. As director, Collins is responsible for inmate safety, inmate supervision, hiring LMDC staff and corrections officers, training LMDC staff and corrections officers, supervising LMDC staff and corrections officers, and disciplining LMDC staff and corrections officers. Director Collins is also responsible for creating, promulgating, implementing, and maintaining customs, policies, and procedures within LMDC. Director Collins has final decision-making authority at LMDC. Leading up to the relevant events of this Complaint Defendant Jerry Collins was high ranking LMDC official responsible for inmate safety, inmate supervision, hiring LMDC staff and corrections officers, training LMDC staff and corrections officers, supervising LMDC staff and corrections officers, and disciplining LMDC staff and corrections officers. Director Collins, as a high ranking LMDC official, was also responsible for creating, promulgating, implementing, and maintaining customs, policies, and procedures within LMDC. Director Collins is sued in his official capacity.

10.    Defendant Director Dwayne Clark is a resident of Jefferson County, Kentucky and was, at all times relevant herein, the director of LMDC. As director, Clark

was responsible for inmate safety, inmate supervision, hiring LMDC staff and corrections officers, training LMDC staff and corrections officers, supervising LMDC staff and corrections officers, and disciplining LMDC staff and corrections officers. Director Clark was also responsible for creating, promulgating, implementing, and maintaining customs, policies, and procedures within LMDC. Director Clark had final decision-making authority at LMDC. Director Clark is sued in his individual and official capacity.

11.    Defendant Sergeant Bobby Chaney is a resident of Jefferson County, Kentucky and was, at all times relevant herein, a sergeant at LMDC. As a sergeant at LMDC, Chaney was responsible for hiring, retaining, supervising, & training LMDC staff, including corrections officers. He was also responsible for the immediate supervision and care of LMDC inmates, as well as the immediate supervision, discipline, and training of LMDC corrections officers. Sergeant Chaney is sued in his individual capacity.

12.    Defendant Officer Daniel Wells is a resident of Jefferson County, Kentucky and was, at all times relevant herein, a corrections officer at LMDC. As a corrections officer at LMDC, Wells was responsible for the immediate supervision and care of LMDC inmates. Officer Wells is sued in his individual capacity.

13.    Defendant Officer Michael Livingston is a resident of Jefferson County, Kentucky and was, at all times relevant herein, a corrections officer at LMDC. As a corrections officer at LMDC, Livingston was responsible for the immediate supervision and care of LMDC inmates. Officer Livingston is sued in his individual capacity.

14.    Defendant Officer Ivan Sample is a resident of Jefferson County, Kentucky and was, at all times relevant herein, a corrections officer at LMDC. As a corrections officer at LMDC, Sample was responsible for the immediate supervision and care of LMDC inmates. Officer Sample is sued in his individual capacity.

5

**STATEMENT OF FACTS**

15.    The allegations of Paragraphs 1 through 14 are incorporated herein by reference.

16.    On December 6, 2021, Officer Wells and Officer Livingston entered Patton's single person cell after Patton asked for personal hygiene items that were being denied.

17.    Neither of the officers activated their body cameras prior to entering the cell.

18.    Officer Wells instructed Patton to sit on his bed and remain there while Patton's personal items were inspected.

19.    Patton complied.

20.    Officer Wells began to throw Patton's legal documents on the ground.

21.    While remaining on the bed, Patton made a verbal remark to Officer Wells about the treatment of his legal documents.

22.    Enraged by Patton's remark, Officer Wells pulled Patton off the bed and began punching Patton with closed fists to the head and body.

23.    After being pulled off the bed and stuck several times, Patton screamed for Officer Livingston to turn on his body camera.

24.    Instead of turning on his body camera, Officer Livingston placed his hand over his body camera, waiting some time to actually active it. Officer Livingston had ample time to intervene and stop Wells from continuing to beat Patton.

25.    Officer Livingston's body camera was activated only after Wells' unprovoked attack had started, and Patton was already on the ground being beaten.

26.    Officer Livingston, then joined in the beating, delivering blows to Patton's head and body.

6

27.     As the beating continued, Sergeant Chaney and Officer Sample came into Patton's cell and also delivered multiple blows to Patton.

28.     While on the ground, Patton was pepper sprayed several times by multiple officers.

29.     Upon information and belief, Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample all pepper sprayed Patton.

30.     As Patton was being beat and pepper sprayed, he made no attempt to fight back or resist.

31.     Instead, as best he could, Patton covered his face and head with his hand and arms in an attempt to protect himself from further injury.

32.     The beating left Patton with head trauma, chest trauma, cuts and bruising, and multiple rib fractures.

33.     Another inmate, Brian Taylor, witnessed the beating.

34.     After they finished beating Patton, the Defendants dragged Patton to a separate location at LMDC and called for a nurse.

35.     While waiting for the nurse, the Defendants all agreed that Patton could not be allowed to receive legitimate medical attention for his injuries because such medical attention would require scrutiny that could uncover the Defendants' misconduct.

36.     Accordingly, the Defendants all warned Patton that if he told the nurse what actually happened, he would be beat again.

37.     Afraid of the threatened reprisal, Patton did not tell the nurse what actually happened.

38.     Moreover, the Defendants actively prevented the nurse from conducting a thorough investigation.

39.     The nurse, being prevented from conducting a competent examination and being prevented from knowing the facts and extent of the beating, was unable to perform a competent evaluation and improperly determined that Patton had no injuries.

40.     The nurse only came to such a conclusion because she was unable to competently examine Patton due to the Defendants' threats and active prevention.

41.     Sergeant Chaney took a single picture of Patton's head after the beating.

42.     Chaney angled the camera in such a way as to conceal the damage done to Patton as a result of the beating.

43.     After the bogus examination and documentation, Patton was brought back to another single cell.

44.     Once inside the cell, Sergeant Chaney stomped on Patton's foot, digging his heal into the arch of Patton's foot.

45.     Sergeant Chaney then left and came back to the cell where Patton was being held and presented Patton with disciplinary paperwork.

46.      Patton told Sergeant Chaney that his ribs were broken.

47.     Sergeant Chaney said, "I know," but made it clear to Patton that no further action of any kind would be taken to treat his injuries.

48.     Some hours later, Patton was able to stop another corrections officer, Officer Brooks, who was passing his cell.

49.     Patton explained what happened, and Officer Brooks took pictures of Patton's actual injuries and the blood stains on the floor of the cell where Patton was beaten.

50.     Officer Brooks also called another nurse to perform a proper medical inspection upon Patton.

51.    Upon proper inspection, the nurse determined that Patton potentially had broken ribs and head trauma.

52.    Accordingly, the nurse recommended that Patton be sent to the hospital for imaging and further diagnostic testing.

53.    Patton was not sent to the hospital until December 13, 2021, a week after his injuries. Upon information and belief, Sergeant Chaney was responsible for the length of delay in Patton getting to a hospital and the lack of treatment during that delay.

54.    Patton received no medical treatment for his injuries in the 7 days prior to finally being taken to the hospital.

55.    Despite being in severe pain and relatively immobile, Patton managed to timely file grievances and otherwise exhaust his administrative remedies to the extent possible while waiting to be taken to the hospital.

56.    At the hospital, imaging revealed that Patton suffered multiple rib fractures, head trauma, and neck trauma from the assault.

57.    As a result of the beating, Patton suffered, and continues to suffer, severe physical pain and suffering, mental anguish, and emotional distress. Patton also believes LMDC incurred medical expenses on behalf of Patton that Patton should not be required to reimburse.

58.    Back at LMDC, Sergeant Chaney—who was instrumentally involved in the beating—was assigned to investigate the use of force against Patton and the disciplinary charges against Patton.

59.    Unsurprisingly, Sergeant Chaney's investigations concluded that the use of force was appropriate, no misconduct on the part of LMDC staff had taken place, and that Patton was guilty of disciplinary infractions.

9

60.     Chaney's investigations were a farce. Instead of actually investigating the incident, Sergeant Chaney took the opportunity to cover up the beating and denial of adequate medical care by falsely concluding that no misconduct by LMDC staff occurred and Patton had committed disciplinary infractions.

61.     None of Defendants were appropriately disciplined in connection with the beating.

62.     Patton's beating, the denial of adequate medical care, and the lack of resulting adequate disciplinary action, is one instance in a pattern of similar incidents that occur regularly at LMDC.

63.     On April 5, 2021, LMDC officers used excessive force on a pre-trial detainee, Charles Whayne, when they beat Whayne while he was restrained on the ground. On May 2, 2021, an LMDC officer entered Whayne's cell and immediately began physically assaulting Whayne. A federal lawsuit was filed on October 28, 2021. Director Clark and Director Collins were aware of this lawsuit and the underlying assaults that occurred.

64.     On January 19, 2020, inmate Quantez Willis claims that LMDC officers pepper sprayed and choked him until he was unconscious without justification, as he was in the process of complying with their commands. A federal lawsuit was filed. Director Clark and Director Collins were aware of this lawsuit and the underlying assault that occurred.

65.     On September 8, 2021, inmate De'Ontae Antwyan Gott claims that two LMDC officers used excessive force on him while he was handcuffed. A federal lawsuit was filed.   Director Clark and Director Collins were aware of this lawsuit and the underlying assault that occurred.

66.     On August 12, 2020, inmate Anthony Lee Brandenburg claims that several LMDC officers beat him and then tried to cover it up, moved him to a different location, and refused to give him medical care. A federal lawsuit was filed. Director Clark and Director Collins were aware of this lawsuit and the underlying assault that occurred.

67.     On January 31, 2019, inmate Erin Jermaine Smith-Spencer claims that LMDC officers used excessive force on him. A federal lawsuit was filed. Director Clark and Director Collins were aware of this lawsuit and the underlying assault that occurred.

68.     In early 2020, inmate DeShawn Moore claims that LMDC officers used excessive force on him and denied him medical care. A federal lawsuit was filed. Director Clark and Director Collins were aware of this lawsuit and the underlying assault that occurred.

69.     On May 31, 2020, inmate Jeylani Bakari claims that LMDC officers used excessive force on him and denied him medical care. A federal lawsuit was filed. Director Clark and Director Collins were aware of this lawsuit and the underlying assault that occurred.

70.     On May 31, 2020, inmate Theddis Barnes claims that LMDC officers used excessive force on him and denied him medical care. A federal lawsuit was filed. Director Clark and Director Collins were aware of this lawsuit and the underlying assault that occurred.

71.     On May 31, 2020, inmate Joseph Von Cannon claims that LMDC officers used excessive force on him and denied him medical care. A federal lawsuit was filed. Director Clark and Director Collins were aware of this lawsuit and the underlying assault that occurred.

72.     Recently, a former corrections officer at LMDC, Darrell Taylor, was convicted of violating an inmate's civil rights by assaulting the inmate on December 15, 2020. As director, Clark was aware of this assault and the criminal proceedings against the former officer. *See* https://www.wave3.com/2022/10/06/former-louisville-corrections-officer-found-guilty-assaulting-inmate/.

73.     These examples are just a few of the many instances in which LMDC officers use excessive force against inmates and deny them adequate medical care. All of which were known, or should have been known, by Director Clark and Director Collins.

74.     Prior to Patton's assault, LMDC Director Dwayne Clark, acting as an agent of Louisville/Jefferson County Metro Government, along with other high ranking LMDC staff, including Director Collins, were aware that incidents of excessive force and denial of adequate medical care were routinely occurring within LMDC.

75.     Director Clark, along with other high ranking LMDC staff, including Director Collins, were also aware that those incidents were going unpunished, and that offending officers were not receiving appropriate punishment, if any.

76.     Director Clark and other high ranking LMDC staff, including Director Collins, did nothing to address the pattern of clear constitutional violations or the lack of discipline regarding those officers committing such violations.

77.     Director Clark and Director Collins' inaction amounts to deliberate indifference.

78.     Director Clark and Director Collins, faced with a clear pattern of excessive force and denial of adequate medical care, knew that the hiring practices and training program at LMDC, for which they were responsible, were grossly inadequate. Yet, they

took no action to improve or otherwise address the obviously insufficient training and hiring policies and programs.

79.    Director Clark and Director Collins' inaction on all fronts signaled their endorsement, and by extension the Louisville/Jefferson County Metro Government's endorsement, of the continued use of excessive force and denial of adequate medical care by LMDC staff.

80.    Through their actions, or inactions, Director Clark and Director Collins established a custom of excessive force and denial of adequate medical care to inmates at LMDC.

81.    Emboldened by Director Clark and Director Collins' lack of action, LMDC staff continued to freely violate inmates' constitutional rights by using excessive force and denying adequate medical care.

82.    Indeed, Director Clark and Director Collins' inaction in the face of a clear pattern of excessive force directly caused Patton's assault.

## COUNT I

### § 1983 claim against Sergeant Chaney for use of excessive force in violation of the Fourteenth and Eighth Amendments to the United States Constitution.

83.    The allegations of Paragraphs 1 through 82 are incorporated herein by reference.

84.    At all relevant times, the conduct of Sergeant Chaney was within the purview of 42 U.S.C. § 1983.

85.    As described above, Sergeant Chaney used excessive force against Patton on December 6, 2021, when he beat and pepper sprayed Patton without provocation, without legitimate penal justification, and with the intent to punish Patton.

86.    Sergeant Chaney's actions were performed under the color of state law and violated Patton's Fourteenth and Eighth Amendment rights to be free from excessive force by corrections officers.

87.    Sergeant Chaney's excessive force was the direct and proximate cause of the serious injuries to Patton and claimed damages herein.

88.    Sergeant Chaney knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

89.    Sergeant Chaney's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Sergeant Chaney is liable to Patton under 42 U.S.C. § 1983.

90.    At all relevant times, Sergeant Chaney acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT II

**§ 1983 claim against Officer Wells for use of excessive force in violation of the Fourteenth and Eighth Amendments to the United States Constitution.**

91.    The allegations of Paragraphs 1 through 90 are incorporated herein by reference.

92.    At all relevant times, the conduct of Officer Wells was within the purview of 42 U.S.C. § 1983.

93.    As described above, Officer Wells used excessive force against Patton on December 6, 2021, when he beat and pepper sprayed Patton without provocation, without legitimate penal justification, and with the intent to punish Patton.

94.    Officer Wells' actions were performed under the color of state law and violated Patton's Fourteenth and Eighth Amendment rights to be free from excessive force by corrections officers.

95.    Officer Wells' excessive force was the direct and proximate cause of the serious injuries to Patton and claimed damages herein.

96.    Officer Wells knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

97.    Officer Wells' conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Officer Wells is liable to Patton under 42 U.S.C. § 1983.

98.    At all relevant times, Officer Wells acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT III

### § 1983 claim against Officer Livingston for use of excessive force in violation of the Fourteenth and Eighth Amendments to the United States Constitution

99.    The allegations of Paragraphs 1 through 9 are incorporated herein by reference.

100.    At all relevant times, the conduct of Officer Livingston was within the purview of 42 U.S.C. § 1983.

101.    As described above, Officer Livingston used excessive force against Patton on December 6, 2021, when he beat and pepper sprayed Patton without provocation, without legitimate penal justification, and with the intent to punish Patton.

102.    Officer Livingston's actions were performed under the color of state law and violated Patton's Fourteenth and Eighth Amendment rights to be free from excessive force by corrections officers.

103.    Officer Livingston's excessive force was the direct and proximate cause of the serious injuries to Patton and claimed damages herein.

104.    Officer Livingston's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Officer Livingston is liable to Patton under 42 U.S.C. § 1983.

105.    Officer Livingston knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

106.    At all relevant times, Officer Livingston acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

**COUNT IV**

**§ 1983 claim against Officer Sample for use of excessive force in violation of the Fourteenth and Eighth Amendments to the United States Constitution**

107.    The allegations of Paragraphs 1 through 106 are incorporated herein by reference.

108.    At all relevant times, the conduct of Officer Sample was within the purview of 42 U.S.C. § 1983.

109.    As described above, Officer Sample used excessive force against Patton on December 6, 2021, when he beat and pepper sprayed Patton without provocation, without legitimate penal justification, and with the intent to punish Patton.

110.    Officer Sample's actions were performed under the color of state law and violated Patton's Fourteenth and Eighth Amendment rights to be free from excessive force by corrections officers.

111.    Officer Sample's excessive force was the direct and proximate cause of the serious injuries to Patton and claimed damages herein.

112.    Officer Sample knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

113.    Officer Sample's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Officer Sample is liable to Patton under 42 U.S.C. § 1983.

114.    At all relevant times, Officer Sample acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT V

### § 1983 claim against Sergeant Chaney for failure to provide adequate medical care in violation of the Fourteenth and Eighth Amendments to the United States Constitution

115.    The allegations of Paragraphs 1 through 114 are adopted and incorporated herein as if fully restated.

116.    At all relevant times, the conduct of Sergeant Chaney was within the purview of 42 U.S.C. § 1983.

117.    After the beating, Patton was suffering from serious physical injuries and consequently had serious medical needs.

118.    Patton's injuries were of the type that would cause even a layman to recognize the obvious need for prompt and competent medical treatment.

119.    Sergeant Chaney subjectively perceived a substantial risk of harm to Patton should Patton not receive prompt and competent medical treatment.

120.    As described above, Sergeant Chaney acted with deliberate indifference to that risk and to Patton's serious medical needs when he threatened Patton with further injury if Patton told the nurse the truth about the beating and the extent of his injuries. He exhibited further indifference when he actively prevented the nurse from conducting a competent examination. Because he was prevented by Sergeant Chaney from properly and candidly interacting with medical personnel, medical personal could not competently treat Patton, and his serious medical needs went unaddressed.

121.    Sergeant Chaney acted with further deliberate indifference to Patton's serious medical needs and the risk those serious medical needs posed if untreated when Patton later told Sergeant Chaney that his ribs were broken and requested *actual* medical treatment. Instead of providing Patton actual access to a competent medical professional, Chaney replied, "I know," and provided Patton no access to further treatment.

122.    By exhibiting deliberate indifference to Patton's serious medical needs and the associated risks—all of which Sergeant Chaney caused—Sergeant Chaney violated Patton's clearly established Fourteenth Amendment rights.

123.    Sergeant Chaney knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

124.    Sergeant Chaney acted with deliberate indifference toward Patton by failing to provide him with adequate medical care.

125.    Sergeant Chaney's failure to provide adequate medical care to Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

126.   Sergeant Chaney's actions were performed under the color of state law, and violated Patton's Fourteenth and Eighth Amendment rights to be provided adequate medical care.

127.   Sergeant Chaney's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Sergeant Chaney is liable to Patton under 42 U.S.C. § 1983.

128.   At all relevant times, Sergeant Chaney acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT VI

### § 1983 claim against Officer Wells for failure to provide adequate medical care in violation of the Fourteenth and Eighth Amendments to The United States Constitution

129.   The allegations of Paragraphs 1 through 128 are adopted and incorporated herein as if fully restated.

130.   At all relevant times, the conduct of Officer Wells was within the purview of 42 U.S.C. § 1983.

131.   After the beating, Patton was suffering from serious physical injuries and consequently had serious medical needs.

132.   Patton's injuries were of the type that would cause even a layman to recognize the obvious need for prompt and competent medical treatment.

133.   Officer Wells subjectively perceived a substantial risk of harm to Patton if Patton did not receive prompt and competent medical treatment.

134.   As described above, Officer Wells acted with deliberate indifference to that risk and to Patton's serious medical needs when he threatened Patton with further injury

if Patton told the nurse the truth about the beating and the extent of his injuries. He exhibited further indifference when he actively prevented the nurse from conducting a competent examination. Because he was prevented by Officer Wells from properly and candidly interacting with medical personnel, medical personal could not competently treat Patton, and Patton's serious medical needs went unaddressed.

135.    By exhibiting deliberate indifference to Patton's serious medical needs and the associated risks—all of which Officer Wells caused—Officer Wells violated Patton's clearly established Fourteenth and Eighth Amendment rights.

136.    Officer Wells knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

137.    Officer Wells acted with deliberate indifference toward Patton by failing to provide him with adequate medical care.

138.    Officer Wells' failure to provide adequate medical care to Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

139.    Officer Wells' actions were performed under the color of state law, and violated Patton's Fourteenth and Eighth Amendment rights to be provided adequate medical care.

140.    Officer Well's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Officer Wells is liable to Patton under 42 U.S.C. § 1983.

141.    At all relevant times, Officer Wells acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT VIII

### § 1983 claim against Officer Livingston for failure to provide adequate medical care in violation of the Fourteenth and Eighth Amendments to the United States Constitution

142.    The allegations of Paragraphs 1 through 141 are adopted and incorporated herein as if fully restated.

143.    At all relevant times, the conduct of Officer Livingston was within the purview of 42 U.S.C. § 1983.

144.    After the beating, Patton was suffering from serious physical injuries and consequently had serious medical needs.

145.    Patton's injuries were of the type that would cause even a layman to recognize the obvious need for prompt and competent medical treatment.

146.    Officer Livingston subjectively perceived a substantial risk of harm to Patton if Patton did not receive prompt and competent medical treatment.

147.    As described above, Officer Livingston acted with deliberate indifference to that risk and to Patton's serious medical needs when he threatened Patton with further injury if Patton told the nurse the truth about the beating and the extent of his injuries. He exhibited further indifference when he actively prevented the nurse from conducting a competent examination. Because he was prevented by Officer Livingston from properly and candidly interacting with medical personnel, medical personal could not competently treat Patton, and Patton's serious medical needs went unaddressed.

148.    By exhibiting deliberate indifference to Patton's serious medical needs and the associated risks—all of which Officer Livingston caused—Officer Livingston violated Patton's clearly established Fourteenth and Eighth Amendment rights.

149.    Officer Livingston knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

150.    Officer Livingston acted with deliberate indifference toward Patton by failing to provide him with adequate medical care.

151.    Officer Livingston's failure to provide adequate medical care to Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

152.    Officer Livingston's actions were performed under the color of state law, and violated Patton's Fourteenth and Eighth Amendment rights to be provided adequate medical care.

153.    Officer Livingston's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Officer Livingston is liable to Patton under 42 U.S.C. § 1983.

154.    At all relevant times, Officer Livingston acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

### COUNT IX

**§ 1983 claim against Officer Sample for failure to provide adequate medical care in violation of the Fourteenth and Eighth Amendments to the United States Constitution**

155.    The allegations of Paragraphs 1 through 154 are adopted and incorporated herein as if fully restated.

156.    At all relevant times, the conduct of Officer Sample was within the purview of 42 U.S.C. § 1983.

157.    After the beating, Patton was suffering from serious physical injuries and consequently had serious medical needs.

158.    Patton's injuries were of the type that would cause even a layman to recognize the obvious need for prompt and competent medical treatment.

159.    Officer Sample subjectively perceived a substantial risk of harm to Patton if Patton did not receive prompt and competent medical treatment.

160.    As described above, Officer Sample acted with deliberate indifference to that risk and to Patton's serious medical needs when he threatened Patton with further injury if Patton told the nurse the truth about the beating and the extent of his injuries. He exhibited further indifference when he actively prevented the nurse from conducting a competent examination. Because he was prevented by Officer Sample from properly and candidly interacting with medical personnel, medical personal could not competently treat Patton, and Patton's serious medical needs went unaddressed.

161.    By exhibiting deliberate indifference to Patton's serious medical needs and the associated risks—all of which Officer Sample caused—Officer Sample violated Patton's clearly established Fourteenth and Eighth Amendment rights.

162.    Officer Sample knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

163.    Officer Sample acted with deliberate indifference toward Patton by failing to provide him with adequate medical care.

164.    Officer Sample's failure to provide adequate medical care to Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

165.    Officer Sample's actions were performed under the color of state law, and violated Patton's Fourteenth and Eighth Amendment rights to be provided adequate medical care.

166.    Officer Sample's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Officer Sample is liable to Patton under 42 U.S.C. § 1983.

167.    At all relevant times, Officer Sample acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT X

### § 1983 claim against Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample for conspiracy to deprive Patton adequate medical care in violation of the Fourteenth and Eighth Amendments to the United States Constitution

168.    The allegations of Paragraphs 1 through 167 are adopted and incorporated herein as if fully restated.

169.    At all relevant times, the conduct of Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample were within the purview of 42 U.S.C. § 1983.

170.    After the beating, Patton was suffering from serious physical injuries and consequently had serious medical needs.

171.    Patton's injuries were of the type that would cause even a layman to recognize the obvious need for prompt and competent medical treatment.

172.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample subjectively perceived a substantial risk of harm to Patton if Patton did not receive prompt and competent medical treatment.

173.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample, agreed to deprive Patton of adequate medical care.

174.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample's intent in making that agreement was to unlawfully deprive Patton of his constitutional rights and further harm Patton.

175.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample took concerted action in furtherance of that agreement by threatening Patton with further injury if he truthfully told medical professionals about the beating and the extent of his injuries.

176.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample took concerted action in furtherance of that agreement by actively preventing the nurse from competently examining Patton.

177.    As a result of Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample's conspiracy, Patton was unable to obtain competent medical care, and his serious physical injuries went unaddressed.

178.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample knew that they were violating Patton's clearly established Fourteenth and Eighth Amendment rights as they formed and furthered their conspiracy.

179.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample's conspiracy to deprive Patton of adequate medical care was a direct and proximate cause of Patton's injuries and claimed damages herein.

180.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample's actions were performed under the color of state law and violated Patton's Fourteenth and Eighth Amendment rights to be provided adequate medical care.

181.    Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights

under the United States Constitution. Accordingly, Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample are liable to Patton under 42 U.S.C. § 1983.

182.    At all relevant times, Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT XI

### § 1983 claim against Sergeant Chaney for supervisory liability

183.    The allegations of Paragraph 1 through 182 are adopted and incorporated herein as if fully restated.

184.    At all relevant times, the conduct of Sergeant Chaney was within the purview of 42 U.S.C. § 1983.

185.    Sergeant Chaney was the direct supervisor of Officer Livingston, Officer Sample, and Officer Wells.

186.    As such, Sergeant Chaney was responsible for the training, supervision, and discipline of Officer Livingston, Officer Sample, and Officer Wells.

187.    Sergeant Chaney authorized, encouraged, and caused Officer Livingston, Officer Sample, and Officer Wells to violate Patton's Fourteenth and Eighth Amendment rights, by refusing to properly train Officer Livingston, Officer Samples, and Officer Wells, by refusing to punish the misconduct of his subordinates, including Officer Livingston, Officer Samples, and Officer Wells, by refusing to properly investigate officer misconduct, and by refusing to supervise his subordinates, including Officer Livingston, Officer Samples, and Officer Wells, to prevent misconduct.

188.    Furthermore, Sergeant Chaney encouraged and authorized Officer Livingston, Officer Sample, and Officer Wells' use of excessive force against Patton by directly participating in the use of that excessive force. Sergeant Chaney was in the cell alongside the officers and actively beating Patton with them.

189.    Sergeant Chaney's actions were a direct and proximate cause of Patton's injuries and claimed damages herein.

190.    Sergeant Chaney's actions were performed under the color of state law and violated Patton's Fourteenth and Eighth Amendment rights to be free from excessive force.

191.    Sergeant Chaney knew that he was violating Patton's clearly established Fourteenth and Eighth Amendment rights as he was doing so.

192.    Sergeant Chaney's conduct exhibited a flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Sergeant Chaney is liable to Patton under 42 U.S.C. § 1983.

193.    At all relevant times, Sergeant Chaney acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT XII

### § 1983 *Monell* claim against the Louisville/Jefferson County Metro Government

194.    The allegations of Paragraph 1 through 193 are adopted and incorporated herein as if fully restated.

195.    At all relevant times leading up to, during, and after the December 6, 2021 incidents described herein, Dwayne Clark was the LMDC Director. At all relevant times

leading up to the December 6, 2021 incident, Director Collins was a high ranking LMDC official. Director Collins is the current LMDC Director.

196.    As LMDC director, when acting in his official capacity, Director Clark was acting as an agent of LMDC and by extension the Louisville/Jefferson County Metro Government. As a high ranking LMDC official, Director Collins was acting as an agent of LMDC and by extension the Louisville/Jefferson County Metro Government. As the current LMDC director, Director Collins is an agent of LMDC and by extension the Louisville/Jefferson County Metro Government.

197.    At all relevant times, the conduct of Director Clark and Director Collins, and by extension the Louisville/Jefferson County Metro Government, was within the purview of 42 U.S.C. § 1983.

198.    Director Clark, in his official capacity as LMDC Director, was responsible for creating, implementing, enforcing, and promulgating all training programs, training materials, rules, policies, procedures, practices, and customs within LMDC. Director Collins, as a high ranking LMDC official, was responsible for creating, implementing, enforcing, and promulgating all training programs, training materials, rules, policies, procedures, practices, and customs within LMDC. Director Collins, as the current LMDC director, is responsible for creating, implementing, enforcing, and promulgating all training programs, training materials, rules, policies, procedures, practices, and customs within LMDC.

199.    LMDC has a training program for its corrections staff, including officers and supervisors, that is grossly inadequate for the duties these staff members are tasked to perform.

200.   This inadequacy results from Director Clark and Director Collins', and by extension the Louisville/Jefferson County Metro Government's, deliberate indifference toward the constitutionally protected rights of inmates and other persons with whom LMDC staff regularly comes into contact.

201.   This inadequacy is evidenced by the clear and continued pattern of excessive force and denial of adequate medical care exhibited by LMDC staff when interacting with inmates.

202.   Director Clark and Director Collins, and by extension the Louisville/Jefferson County Metro Government, were aware of the pattern of excessive force and denial of adequate medical care and allowed the pattern to continue without taking any corrective action.

203.   Director Clark and Director Collins made no efforts to increase or alter training practices so as to address the clear pattern of excessive force.

204.   Worse still, Director Clark and Director Collins allowed officer misconduct, particularly excessive force and denial of adequate medical care, to routinely go unpunished so as to create a custom of tolerance with regard to constitutional violations within LMDC.

205.   It was customary for LMDC staff to use excessive force with inmates and deny them adequate medical care due to Director Clark and Director Collins' lack of disciplinary action, lack of training, and inadequate supervision.

206.   It was this custom of excessive force and denial of adequate medical care, endorsed and created by Director Clark and Director Collins, acting in their official capacities as LMDC Director and a high ranking LMDC official, that directly caused the injuries and constitutional violations suffered by Patton.

## COUNT XIII

### battery against Sergeant Chaney

207.    The allegations of Paragraphs 1 through 206 are adopted and incorporated herein as if fully restated.

208.    As described above, Sergeant Chaney unlawfully touched Patton without consent.

209.    That touching was made in a harmful, offensive, and unlawful manner that resulted in direct harm to Patton.

210.    Sergeant Chaney's conduct constitutes a battery.

211.    Sergeant Chaney's unlawful touching of Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

212.    At all relevant times, Sergeant Chaney acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XIV

### battery against Officer Wells

213.    The allegations of Paragraphs 1 through 212 are adopted and incorporated herein as if fully restated.

214.    As described above, Officer Wells unlawfully touched Patton without consent.

215.    That touching was made in a harmful, offensive, and unlawful manner that resulted in direct harm to Patton.

216.    Officer Wells' conduct constitutes a battery.

217.    Officer Wells' unlawful touching of Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

218.    At all relevant times, Officer Wells acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XV

### battery against Officer Livingston

219.    The allegations of Paragraphs 1 through 218 are adopted and incorporated herein as if fully restated.

220.    As described above, Officer Livingston unlawfully touched Patton without consent.

221.    That touching was made in a harmful, offensive, and unlawful manner that resulted in direct harm to Patton.

222.    Officer Livingston's conduct constitutes a battery.

223.    Officer Livingston's unlawful touching of Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

224.    At all relevant times, Officer Livingston acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XVI

### battery against Officer Sample

225.    The allegations of Paragraphs 1 through 224 are adopted and incorporated herein as if fully restated.

226.    As described above, Officer Sample unlawfully touched Patton without consent.

227.    That touching was made in a harmful, offensive, and unlawful manner that resulted in direct harm to Patton.

228.    Officer Sample's conduct constitutes a battery.

229.    Officer Sample's unlawful touching of Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

230.    At all relevant times, Officer Sample acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XVII

### assault against Sergeant Chaney

231.    The allegations of Paragraphs 1 through 230 are adopted and incorporated herein as if fully restated.

232.    As described above, Sergeant Chaney unlawfully directed force toward Patton on December 6, 2021.

233.    Due to the unlawful direction of force Sergeant Chaney used, Patton had a well-founded fear of immediate peril.

234.    Sergeant Chaney's unlawful direction of force toward Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

235.    At all relevant times, Sergeant Chaney acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XVIII

### assault against Officer Wells

236.    The allegations of Paragraphs 1 through 235 are adopted and incorporated herein as if fully restated.

237.    As described above, Officer Wells unlawfully directed force toward Patton on December 6, 2021.

238.    Due to the unlawful direction of force Officer Wells used, Patton had a well-founded fear of immediate peril.

239.    Officer Wells' unlawful direction of force toward Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

240.    At all relevant times, Officer Wells acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XIX

### assault against Officer Livingston

241.    The allegations of Paragraphs 1 through 240 are adopted and incorporated herein as if fully restated.

242.    As described above, Officer Livingston unlawfully directed force toward Patton on December 6, 2021.

243.    Due to the unlawful direction of force Officer Livingston used, Patton had a well-founded fear of immediate peril.

244.    Officer Livingston's unlawful direction of force toward Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

245.    At all relevant times, Officer Livingston acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XX

### assault against Officer Sample

246.    The allegations of Paragraphs 1 through 245 are adopted and incorporated herein as if fully restated.

247.    As described above, Officer Sample unlawfully directed force toward Patton on December 6, 2021.

248.    Due to the unlawful direction of force Officer Sample used, Patton had a well-founded fear of immediate peril.

249.    Officer Sample's unlawful direction of force toward Patton was a direct and proximate cause of Patton's injuries and claimed damages herein.

250.    At all relevant times, Officer Sample acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XXI

### negligent hiring, retention, supervision, & training against Director Clark

251.    The allegations of Paragraphs 1 through 250 are adopted and incorporated herein as if fully restated.

252.    As the Director of LMDC, Director Clark owed Patton a duty to act with reasonable care in hiring, retaining, supervising, and training LMDC staff.

253.    Director Clark failed to act with reasonable care in hiring, retaining, supervising, and training Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample, resulting in Patton's injuries.

254.    Director Clark's failure to act with reasonable care in hiring, retaining, supervising, and training Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample was a breach of the duty he owed Patton.

255.    By the acts and omissions of corrections officers and LMDC staff, including the Defendants, it is evident that Director Clark failed to act with reasonable care in hiring, retaining, supervising, and training LMDC staff with regard to properly using force and providing adequate medical care to inmates, thereby causing Patton's injuries and damages.

256.    Director Clark's failure to act with reasonable care in hiring, retaining, supervising, and training Sergeant Chaney, Officer Wells, Officer Livingston, and Officer Sample is the direct and proximate cause of Patton's injuries and damages.

257.    At all relevant times, Director Clark acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

## COUNT XXII

### § 1983 claim against Sergeant Chaney for denying Patton due process in violation of the Fourteenth Amendment to the United States Constitution

258.    The allegations of Paragraphs 1 through 257 are adopted and incorporated herein as if fully restated.

259.    At all relevant times, the conduct of Sergeant Chaney was within the purview of 42 U.S.C. § 1983.

260.    Sham disciplinary proceedings were initiated against Patton by Sergeant Chaney, and a sham investigation into the use of force against Patton was conducted.

261.    Sergeant Chaney assigned himself to investigate the disciplinary charges as well as the use of force.

262.    Patton had a constitutionally provided liberty interest pursuant to the Fourteenth Amendment to have an investigation regarding those disciplinary charges and the use of force conducted by an LMDC employee that was not involved in the incident.

263.    Moreover, The Louisville Metro Department of Corrections Inmate Handbook guarantees to LMDC inmates "a system for inmate discipline and administrative procedures to ensure fair and impartial due process for all inmates." Louisville Metro Department of Corrections Handbook, p. 16.[1]

264.    The Handbook goes on further to guarantee that "[t]he disciplinary process shall ensure fair disciplinary practices, proper documentation of rule violations and comply with applicable federal and state laws and regulations as well as American Correctional Association (ACA) Standards." *Id.*

265.    These guarantees, in addition to his constitutional due process rights, granted Patton a liberty interest to the extent he was entitled to have an LMDC employee not involved in his beating investigate the resulting disciplinary charges and the use of force that occurred on December 6, 2021.

266.    By assigning himself to conduct both such investigations, Sergeant Chaney violated LMDC policy and Patton's Fourteenth Amendment rights.

---

[1] Available at: https://louisvilleky.gov/corrections/document/307971pdf

267.    Sergeant Chaney's violation of Patton's rights resulted in a tangible loss of Patton's liberty to the extent he was denied certain privileges as a result of the disciplinary charges and the denial of his due process rights.

## COUNT XXIII

### § 1983 Claim Against Officer Livingston for failure to intervene in violation of the Fourteenth and Eighth Amendments to the United States Constitution

268.    The allegations of Paragraphs 1 through 267 are incorporated herein by reference.

269.    At all relevant times, the conduct of Officer Livingston was within the purview of 42 U.S.C. § 1983.

270.    As described above, December 6, 2021, Livingston failed to intervene and prevent Officer Wells from using excessive force against Patton.

271.    Officer Livingston was aware that Officer Wells was using excessive force against Patton in violation of Patton's constitutional rights.

272.    Officer Livingston had the time and opportunity to attempt to intervene and prevent Wells' use of excessive force against Patton.

273.    Officer Livingston's actions on December 6, 2021 were performed under the color of state law, and violated Patton's Fourteenth and Eighth Amendment rights.

274.    Officer Livingston's failure to intervene was the direct and proximate cause of the serious injuries to Patton.

275.    Officer Livingston's conduct was willful and exhibited flagrant disregard for Patton's federally secured rights under the United States Constitution. Accordingly, Officer Livingston is liable to Patton under 42 U.S.C. § 1983.

276.    At all relevant times, Officer Livingston acted with evil motive or intent, or at minimum, with a reckless or callous indifference to the federally protected rights of Patton, such that punitive damages are warranted.

## COUNT XXIV

**negligent hiring, retention, supervision, & training against Sergeant Chaney**

277.    The allegations of Paragraphs 1 through 276 are adopted and incorporated herein as if fully restated.

278.    As an LMDC sergeant, Sergeant Chaney owed Patton a duty to act with reasonable care in hiring, retaining, supervising, and training LMDC staff.

279.    Sergeant Chaney failed to act with reasonable care in hiring, retaining, supervising, and training Officer Wells, Officer Livingston, and Officer Sample, resulting in Patton's injuries.

280.    Sergeant Chaney's failure to act with reasonable care in hiring, retaining, supervising, and training Officer Wells, Officer Livingston, and Officer Sample was a breach of the duty he owed Patton.

281.    By the acts and omissions of corrections officers and LMDC staff, including the Defendants, it is evident that Sergeant Chaney failed to act with reasonable care in hiring, retaining, supervising, and training LMDC staff with regard to properly using force and providing adequate medical care to inmates, thereby causing Patton's injuries and damages.

282.    Sergeant Chaney's failure to act with reasonable care in hiring, retaining, supervising, and training Officer Wells, Officer Livingston, and Officer Sample is the direct and proximate cause of Patton's injuries and damages.

283.    At all relevant times, Sergeant Chaney acted with oppressive, malicious, and fraudulent behavior and willfully, or at minimum wantonly, disregarded the life, health, and/or rights of Patton, such that punitive damages are warranted.

<strong>PRAYER FOR RELIEF</strong>

**WHEREFORE**, Plaintiff, Mathew Patton, requests the following:

A.    A trial by jury;

B.    An award of compensatory and consequential damages, including damages for pain and suffering, emotional distress, humiliation, and all other damages allowable by law in an amount to be determined at trial;

C.    An award for punitive damages;

D.    An award of Patton's attorney's fees, costs, pre-judgment interest, and post-judgment interest, pursuant to 42 U.S.C. § 1988; and

E.    Any further relief which Patton may be entitled under the law.

Respectfully Submitted,

*/s/ James Russell*
James Russell
Michael Smith
RUSSELL SMITH, PLLC
611 W. Main St.
Suite 202
Louisville, KY 40202
(502) 874-4444
jrussell@russellsmithattorneys.com
msmith@russellsmithattorneys.com
*Counsel for Plaintiff*